IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | CIVIL ACTION NO.: |
| Plaintiff, | |
| v. | COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTIES, AND OTHER EQUITABLE RELIEF |
| ALBERT E. PARISH, JR. AND PARISH ECONOMICS, LLC, | |
| Defendants. | |

## I.  SUMMARY

1. This matter involves fraudulent conduct by Parish Economics LLC (Parish Economics), an unregistered commodity pool operator (CPO), and Albert E. Parish, Jr. (Parish), its principal, regarding a purported $400 million commodity pool.

2. Parish and Parish Economics offered and sold interests in four investment pools through March 2007 (collectively the Pools) and one fund. Parish began seeking investments as early as 1986 in a pool that purportedly invested in "the commodity and stock futures and options markets" (the Futures Pool). One or both Defendants caused the other three pools and the fund to come into existence between 1986 and 2007.

3. Since at least January 2003, Defendants have made material misrepresentations and omissions regarding the Pools, including the Futures Pool. Defendants have misrepresented the total amount of funds contained in the Pools, including the total amount of funds invested in the Futures Pool. Additionally, Defendants have provided Futures Pool participants with false periodic account statements showing that participants' funds were invested in the Futures Pool

when, in fact, such participants' funds were not invested in the Futures Pool but were misappropriated by Defendants.

4. Defendants have engaged in, are engaged in, or are about to engage in acts and practices that violate anti-fraud and other provisions of the Commodity Exchange Act, as amended (the Act), 7 U.S.C. § 1 *et seq.* (2002), and the Commodity Futures Trading Commission (Commission) Regulations promulgated thereunder (Regulations), 17 C.F.R. § 1.1 *et seq.* (2006).

5. Accordingly, the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and Regulations. In addition, the Commission seeks civil penalties, restitution to Futures Pool participants, disgorgement of Defendants' ill-gotten gains, a permanent trading ban, and such other relief as the Court may deem necessary or appropriate.

6. Unless restrained and enjoined by the Court, Defendants likely are to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.     JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

8.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the Act and Regulations have occurred, are occurring, or are about to occur within this district, among other places.

### III.     PARTIES

9.      The **Commodity Futures Trading Commission** is an independent federal regulatory agency of the United States empowered to enforce the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations, 17 C.F.R. §§ 1.1. *et seq.*  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, DC  20581.

10.     **Albert E. Parish, Jr.** is an individual who is 49 years of age and is president of Parish Economics and, until March 28, 2007, was a vice president of Battery Wealth Management, Inc. (Battery).  Parish has been a professor of Economics and the Director of the Center for Economic Forecasting at Charleston Southern University since 1990.  Parish holds a Ph.D. in Mathematical Economics from the University of North Carolina.  Parish is the majority owner of Parish Economics LLC and is responsible for its day-to-day operations.  Parish has never been registered with the Commission.

11.     **Parish Economics, LLC** is a South Carolina LLC formed in 1996 that purports to be "an investment pool, business forecast and economic litigation firm."  Parish Economics is located in Summerville, South Carolina.  Parish Economics has never been registered with the Commission.

IV.     FACTS

A.     The Pools

12.     Parish began offering investments in the Futures Pool in 1986 and later offered interests in three other pools and one fund.  The other pools are the Parish Economics LLC Hedged Income Pool (Hedged Income Pool), the Parish Economics LLC Stock Pool (Stock Pool), and the Parish Economics LLC Hard Assets Pool (Parish Hard Assets Pool).  The fund is the Summerville Assets LLC Hard Assets Fund (Summerville Hard Assets Fund).  All of the Pools were managed by one or both Defendants.  Pool participants had no role in management of the Pools.

13.     Defendants provided a subscription agreement for the Futures Pool and written pool agreements to investors in the other pools.  These agreements were also available on the Defendants' website www.parisheconomics.com.

14.      Upon information and belief, Defendants offered no other disclosure documents to investors regarding the Futures Pool.

15.     The Futures Pool subscription agreement represents that the Futures Pool is "an informal pool of money with which individuals can speculate in the commodity and stock futures and options markets."

16.     The Hedged Income Pool agreement represents that the Hedged Income Pool will invest in government bonds, high rated corporate bonds and bond funds, and will use the "U.S. dollar index" to "hedge against currency fluctuations when necessary."

17.     The Stock Pool agreement represents that the Stock Pool will invest in stocks.

18.     The Parish Hard Asset Pool agreement represents that it will invest in jewelry and other collectibles.

19. The minimum investment in the Futures Pool, the Hedged Income Pool, and the Stock Pool is $5,000. The minimum investment in the Parish Hard Assets Pool is $50,000. The minimum investment in the Summerville Hard Assets Fund is $500,000.

20. As of February 28, 2007, there were 599 active investors in the Pools. As of that date, the money, assets and cumulative account information indicate that the Pools should have contained $523,589,931; of which $443,599,338 should have been in the Futures Pool.

**B.**     **Parish, Parish Economics, and the Futures Pool**

21. Parish is an unregistered AP of Parish Economics, an unregistered CPO.

22. Parish is the President and majority member of Parish Economics and controls its day-to-day operations.

23. Parish, on behalf of Parish Economics, was responsible for, among other things:

> a. Making all transactions for the Futures Pool;
>
> b. Selecting appropriate brokerage services to transact the business of the Futures Pool;
>
> c. Making deposits and withdrawals to the Futures Pool as requested by the Futures Pool participants;
>
> d. Sending quarterly statements to Futures Pool participants; and
>
> e. Soliciting investments for the Futures Pool.

24. Parish, on behalf of Parish Economics, actively advertised for investments in the Futures Pool on the website www.parisheconomics.com.

25. Parish, on behalf of Parish Economics, opened accounts at Lind Waldock, a registered Futures Commission Merchant (FCM).

26. Parish, on behalf of Parish Economics, directed pool participants to write checks for investment in the Futures Pool to Parish or Parish Economics.

27. The Defendants never organized the Futures Pool as a separate legal entity from Parish or Parish Economics.

C. **Defendants Made Misrepresentations and Omissions**

28. Defendants made material misrepresentations and omissions about the collective value of the Pools as a whole, the value of the Futures Pool, and the use of the Futures Pool participants' funds.

1. **Defendants Misrepresented the Value of the Pools**

29. Battery is an investment adviser located at 1110 Queensborough Blvd., Mt. Pleasant, South Carolina 29464 and is registered with the U.S. Securities and Exchange Commission.

30. Battery had approximately 29 clients with some or all of their investments managed by Defendants. Fifteen of Battery's clients invested approximately $1.1 million in the Futures Pool.

31. Defendants represented to Battery and on their website that at the end of 2006 the total value of the Pools was approximately $134 million, and that the value of the Futures Pool was approximately $52 million.

32. On March 21, 2007, Defendants provided to Battery a statement from Lind Waldock, purporting to show the Futures Pool had a current account value as of February 28, 2007 of approximately $52 million.

33. In reality, however, Parish Economics had three open accounts at Lind Waldock that, as of February 28, 2007, had a cumulative value of only $120,000.

34. Defendants did not invest Futures Pool assets in the commodity and stock futures markets other than those invested through Lind Waldock.

### 2. Defendants Provided False Account Statements to Futures Pool Participants

35. Defendants provided periodic statements to Futures Pool participants that purported to show the current value of individual participants' investments in the Futures Pool.

36. These periodic statements, in the aggregate, grossly misrepresented the value of the assets actually invested in the Futures Pool.

37. For example, Parish Economics provided account statements to at least three Futures Pool participants that, in the aggregate, represented that the Futures Pool had a value of at least $407,243.93 at the end of 2005, $645,181.40 at the end of 2006 and $970,299.88 as of February 28, 2007.

38. In reality, since January 1, 2005, the total value of Futures Pool assets invested through Lind Waldock has never exceeded $150,000.

### 3. Defendants Misappropriated Futures Pool Participants' Funds

39. Upon information and belief, the vast majority of the Futures Pool participants' funds were never deposited with Lind Waldock, or any other FCM, for trading commodity or stock futures.

40. Since mid-2003, at least one Futures Pool participant wrote checks to Defendants totaling $200,000 for investment in the Futures Pool.

41. No deposits, however, were made into the Lind Waldock accounts since mid-2003.

42. Upon information and belief, no deposits were made by Defendants into any FCM account for trading commodity or stock futures since mid-2003.

43. Upon information and belief, Defendants misappropriated Futures Pool participants' funds instead of investing such funds in the Futures Pool as promised.

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE
### FRAUD IN THE SALE OF COMMODITY FUTURES CONTRACTS

**Violations of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii)**

44.     The allegations set forth in paragraphs 1 through 43 are realleged and incorporated herein by reference.

45.     Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2), makes it unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—(i) to cheat or defraud or attempt to cheat or defraud such other person; (ii) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully enter or cause to be entered for such person any false record thereof; (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person.

46.     Defendants, in or in connection with the orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, where such contracts for futures delivery were or could be used for the purposes set forth in Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2), have cheated or defrauded or attempted to cheat or defraud pool participants or prospective pool participants, and willfully deceived or attempted to deceive pool participants or prospective pool participants by, among other things, knowingly (1) making fraudulent representations that Defendants managed over

$134 million in assets in the Pools, including approximately $52 million in the Futures Pool, (2) issuing false periodic statements to Futures Pool participants, and (3) making fraudulent representations that Futures Pool participants' funds would be invested in commodity and stock futures when such funds were not, in fact, invested in commodity and stock futures and instead were misappropriated by Defendants, all in violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii).

47.     Further, Defendants violated Section 4b(a)(2)(ii) of the Act, 7 U.S.C. § 6b(a)(2)(ii), by issuing false periodic statements to Futures Pool participants.

48.     Parish controls Parish Economics, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Parish Economics' conduct alleged in this Count. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Parish is liable for Parish Economics' violations of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii).

49.     The foregoing acts, misrepresentations, omissions, and failures of Parish occurred within the scope of his employment with Parish Economics; therefore, Parish Economics is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

50.     Each misappropriation, issuance of a false report, misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii).

## COUNT TWO
## FRAUD BY COMMODITY POOL OPERATORS

**Violations of Section 4<u>o</u>(1) of the Act, 7 U.S.C. § 6<u>o</u>(1),
and Regulation 4.41(a), 17 C.F.R. § 4.41(a)**

51. The allegations set forth in paragraphs 1 through 50 are realleged and incorporated herein by reference.

52. As defined in Section 1a(5) of the Act 7 U.S.C. § 1a(5), a CPO is

> any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property . . . for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

53. Section 4<u>o</u>(1) of the Act, 7 U.S.C. § 6<u>o</u>(1), prohibits CPOs and APs of CPOs from using the mails or any other means of interstate commerce to:

> (A) employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
>
> (B) engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

54. Regulation 4.41(a) provides that no CPO or principal of a CPO may advertise in a manner that:

> (1) Employs any device, scheme or artifice to defraud any participant or client or prospective participant or client; or
>
> (2) Involves any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or client or any prospective participant or client.

55. Since at least January 1, 2003, Parish Economics, while acting as an unregistered CPO, and Parish, while acting as an unregistered AP of a CPO, solicited, accepted or received

funds from others and engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in futures.

56.     Defendants employed a device, scheme or artifice to defraud pool participants and prospective pool participants or engaged in a transaction, practice or course of business knowingly or which operated as a fraud or deceit upon Futures Pool participants and prospective Futures Pool participants in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1), by: 1) making fraudulent representations that Defendants managed over $134 million in assets in the Pools, including over $51 million in the Futures Pool; (2) making fraudulent representations that Futures Pool participants' funds would be invested in commodity and stock futures when such funds were not, in fact, invested in commodity and stock futures and instead misappropriated by Defendants; and (3) issuing false periodic statements to Futures Pool participants.

57.     Defendants also made material misrepresentations in advertisements on their website, knowingly or which operated as a fraud or deceit, while soliciting prospective participants in the Futures Pool.  Such misrepresentations constitute violations of Regulation 4.41(a), 17 C.F.R. § 4.41(a).

58.     Parish controls Parish Economics, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Parish Economics' conduct alleged in this Count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Parish is liable for Parish Economics' violations of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) and Regulation 4.41(a), 17 C.F.R. § 4.41(a).

59.     The foregoing acts, misrepresentations, omissions, and failures of Parish occurred within the scope of his employment with Parish Economics; therefore, Parish Economics is liable

for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

60.     Each misappropriation, issuance of a false report, misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1), and Regulation 4.41(a), 17 C.F.R. § 4.41(a).

## COUNT THREE
## FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR

**Violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1)**

61.     The allegations set forth in paragraphs 1 through 60 are realleged and incorporated herein by reference.

62.     Section 4m(1) of the Act provides that it is unlawful for any CPO, unless registered under the Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as a CPO.

63.     Since at least January 1, 2003, Parish Economics has used the mails or instrumentalities of interstate commerce, including faxes, in or in connection with its business as a CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

64.     Parish Economics does not qualify for a registration exemption under either the Act or Regulations.

65.     Parish controls Parish Economics, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Parish Economics' conduct alleged in this Count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Parish is liable for Parish Economics' violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

66. The foregoing acts, misrepresentations, omissions, and failures of Parish occurred within the scope of his employment with Parish Economics; therefore, Parish Economics is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

## COUNT FOUR
## FAILURE TO REGISTER AS AN ASSOCIATED PERSON OF A COMMODITY POOL OPERATOR

**Violations of Section 4k(2) of the Act, 7 U.S.C. § 6k(2)**

67. The allegations set forth in paragraphs 1 through 66 are realleged and incorporated herein by reference.

68. Section 4k(2) of the Act states that it is:

> unlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant or agent . . . in any capacity that involves (i) the solicitation of funds, securities or property for participation in a commodity pool or (ii) the supervision of any person or persons so engaged, unless such person is registered with the Commission . . . as an associated person of such [CPO] . . . . It shall be unlawful for a [CPO] to permit such a person to become or remain associated with the [CPO] in any such capacity if the [CPO] knew or should have known that such person was not so registered . . .

69. Since at least January 1, 2003, Parish has been associated with a CPO, Parish Economics, and involved in the solicitation of funds for participation in pools while failing to register as an AP of the CPO, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2).

70. Parish Economics has permitted Parish to become and remain associated with Parish Economics and knew, or should have known, that Parish was not registered as an AP of Parish Economics, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2).

71. Parish controls Parish Economics, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Parish Economics' conduct alleged in this

Count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Parish is liable for Parish Economics' violations of Section 4k(2) of the Act, 7 U.S.C. § 6k(2).

**COUNT FIVE**
**FAILING TO TREAT THE POOL AS A SEPARATE ENTITY AND RECEIVE FUNDS IN THE POOL NAME**

**Violations of Regulation 4.20(a) and (b), 17 C.F.R. § 4.20(a) and (b)**

72. The allegations set forth in paragraphs 1 through 71 are realleged and incorporated herein by reference.

73. Regulation 4.20(a), 17 C.F.R. § 4.20(a) requires a CPO to operate its pool as an entity cognizable as a legal entity separate from that of the pool.  Regulation 4.20(b), 17 C.F.R. § 4.20(b). requires a CPO to receive all funds from pool participants in the pool's name.

74. Parish Economics never established separate pool entities or accounts in the name of the Futures Pool, in violation of Regulation 4.20(a), 17 C.F.R. § 4.20(a).

75. Parish Economics received pool participants' money in its own name, rather than in the Futures Pool's name, in violation of Regulation 4.20(b), 17 C.F.R. § 4.20(b).

76. Parish controls Parish Economics, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Parish Economics' conduct alleged in this Count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Parish is liable for Parish Economics' violation of Regulation 4.20(a) and (b), 17 C.F.R. § 4.20(a) and (b).

77. The foregoing acts, misrepresentations, omissions, and failures of Parish occurred within the scope of his employment with Parish Economics; therefore, Parish Economics is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

78. Each failure to operate a pool as an entity separate from the CPO and other pools and each instance of receiving pool funds in a name other than the pool is alleged as a separate and distinct violation of Regulation 4.20(a) and (b), 17 C.F.R. § 4.20(a) and (b).

## COUNT SIX
## FAILURE TO COMPLY WITH DISCLOSURE AND REPORTING REQUIREMENTS
### Violations of Regulation 4.21, 17 C.F.R. § 4.21

79. The allegations set forth in paragraphs 1 through 78 are realleged and incorporated herein by reference.

80. Regulation 4.21, 17 C.F.R. § 4.21, provides that "each commodity pool operator registered or required to be registered under the Act must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool prepared in accordance with §§4.24 and 4.25" of the Regulations.

81. Parish Economics has failed to provide a pool disclosure document in the form specified by Regulation 4.21, 17 C.F.R. § 4.21, to prospective Futures Pool participants.

82. Parish controls Parish Economics, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Parish Economics' conduct alleged in this Count. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Parish is liable for Parish Economics' violation of Regulation 4.21, 17 C.F.R. § 4.21.

83. The foregoing acts, misrepresentations, omissions, and failures of Parish occurred within the scope of his employment with Parish Economics; therefore, Parish Economics is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

84. Each failure to furnish required disclosure documents to prospective pool participants and pool participants, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Regulations 4.21, 17 C.F.R. §4.21.

## VI. RELIEF

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

(a) an order finding that Defendants violated Sections 4b(a)(2)(i)-(iii), 4o, 4k(2) and 4m(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii), 6o, 6k(2) and 6m and Regulations 4.20(a) and (b), 4.21, and 4.41(a), 17 C.F.R. §§ 4.20(a) and (b), 4.21, and 4.41(a); that Parish is liable for Parish Economics' violations of the Act and Regulations, as alleged herein, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b); and that Parish Economics is liable for Parish's violations of the Act and Regulations, as alleged herein, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2.

(b) an order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, including any successor thereof, from engaging in conduct violative of the sections of the Act and Regulations that they have been alleged to violate;

(c) an order of permanent injunction prohibiting Defendants from engaging, directly or indirectly, in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, , 7 U.S.C. § 1a(4) (commodity interest), including but not limited to, the following:

1. trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

    2. engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

    3. soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest;

    4. entering into any commodity interest transactions for his own personal account, for any account in which he has a direct or indirect interest and/or having any commodity interests traded on his behalf; and

    5. engaging in any business activities related to commodity interest trading.

 (d) an order of permanent injunction from applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9);

 (e) an order directing Defendants, as well as any other person or entity associated with them, including any successor thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act or Regulations, as described herein, and interest thereof from the date of such violations;

 (f) an order directing Defendants, as well as any other person or entity associated with them, including any successor thereof, to make full restitution, pursuant to such procedure as the Court may order, to every Futures Pool participant whose funds were received by them as a

result of acts and practices which constitute violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

 (g) an order imposing upon each Defendant a civil penalty pursuant to § 6c(d)(1), 7 U.S.C. 13a-1 and Regulation 143.8, 17 C.F.R. § 143.8;

 (h) an order for such other and further remedial ancillary relief as the Court may deem appropriate.

              Respectfully submitted,

              REGINALD I. LLOYD
              UNITED STATES ATTORNEY

              BY: s/ John H. Douglas
              JOHN  H.  DOUGLAS (#587)
              Assistant U.S.  Attorney
              151 Meeting St. Suite 200
              P.O. Box 978
              Charleston, S.C.  29402
              (843) 727-4381 (voice)
              (8430 727-4443 (fax)
              email:  john.douglas@usdoj.gov

              JO METTENBURG
              JEFF LERICHE
              CHARLES D. MARVINE
              Commodity Futures Trading Commission
              Division of Enforcement
              2 Emanuel Cleaver II Blvd., Ste. 300
              Kansas City, MO 64112
              Tel:  (816) 960-7744 (Mettenburg)
              Tel:  (816) 960-7745 (LeRiche)
              Tel:  (816) 960-7743 (Marvine)
              Fax:  (816) 960-7750
              jmettenburg@cftc.gov
              jleriche@cftc.gov
              cmarvine@cftc.gov

              Attorneys for Plaintiff